**United States District Court**
**District of South Carolina**
**Charleston Division**

|  |  |
|---|---|
| John Doe 197, ) | C/A: 2-22-cv-00816-DCN |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| ) | **Complaint** |
| ) | **(Jury Trial Demanded)** |
| vs. ) |  |
| ) |  |
| The Bishop of Charleston, a Corporation ) |  |
| Sole, The Bishop of the Diocese of ) |  |
| Charleston, in his official capacity, and ) |  |
| Rev. Fr. Bryan Babick, ) |  |
| ) |  |
| Defendants. ) |  |
| ) |  |

TO: THE DEFENDANTS ABOVE NAMED

Plaintiff, complaining of the Defendants, alleges and says:

## PARTIES AND JURISDICTION

1. John Doe 197 (hereinafter "Plaintiff") is a pseudonym for a resident of Charleston County. Plaintiff is a graduate of St. Joseph's Seminary College in Saint Benedict, Louisiana, and was previously acquainted with Defendant, Rev. Fr. Babick (hereinafter referred to as "Defendant Babick") during their time together at Bishop England High School. Plaintiff is identified in this Complaint by a pseudonym because this case is about sexual abuse upon him. Plaintiff's identity has been withheld due to the sensitivity and private nature of the allegations contained herein.

1

2. Plaintiff's identity will be disclosed to the Defendants upon their written agreement to maintain his identity confidential as to the public record, or, if Defendants do not consent, after obtaining affirmative relief by this Court.

3. Defendant, The Bishop of Charleston, a Corporation Sole (hereinafter referred to as "Diocese"), and/or its predecessors, is and was at all times material hereto a corporation organized under the laws of the State of South Carolina, having its principal place of business at 117 Broad Street, Charleston, South Carolina (now located in the same city and county at 901 Orange Grove Road). The Diocese is and was the entity through which the religious and other affairs of the Roman Catholic Church in South Carolina are and were conducted. The Diocese and its employees and agents were and continue to be responsible for the selection and assignment of clergy, supervision of clergy, and lay employee activities, the exercise of authority over the various members of its denomination, and the maintenance of the well-being of its members, spiritual and otherwise.

4. The Bishop of the Diocese of Charleston (hereinafter referred to as "Bishop") is sued in his official capacity. The Bishop is ultimately responsible for the priests and other employed by his Diocese.

5. Defendant Babick is the Parish Administrator at Our Lady of Good Counsel Catholic Church in Folly Beach, South Carolina and was previously Chaplain at Bishop England High School on Daniel Island, South Carolina.

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the first cause of action raises a federal question.

7. Venue of this action is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL SUMMARY

8. Defendant Diocese operates churches and parochial schools in Charleston County and throughout South Carolina offering primary, elementary, and secondary educations.

9. At all times material to the incidents alleged in this Complaint, Defendant Babick was a priest of the Diocese of Charleston. Defendant Babick was assigned by the Diocese and Bishop and, at all times, under direct supervision, employ, and control of the Diocese and the Bishop.

10. Plaintiff, a devout member of the Roman Catholic Church, is a graduate of St. Joseph's Seminary College in Saint Benedict, Louisiana. Plaintiff has long planned to become a priest within the Catholic Church.

11. In the fall of 2014, Plaintiff came to know Defendant Babick through Plaintiff's enrollment at Bishop England High School on Daniel Island, South Carolina. Based on this relationship, as cultivated by Bishop England High School and encouraged by the Diocese and the Bishop, Plaintiff trusted, admired, revered and respected Defendant Babick as an authority figure, a holy man, role model, counselor, teacher, confessor, and reposed in him trust and confidence. As a result, Plaintiff entrusted to Defendant Babick his personal safety and shared with Defendant Babick his most confidential information and took direction from him.

12. Plaintiff was not born into a catholic family, however, coming to know and beginning a relationship with Defendant Babick, Plaintiff felt compelled to join the seminary and

become a priest. Plaintiff relied upon Defendant Babick as a spiritual advisor and mentor. Plaintiff and Defendant Babick would often spend time together after school where Babick would gain Plaintiff's trust by encouraging Plaintiff to confide in him and rely upon him for personal, faith, and life advice.

13. In May of 2019, it was discovered that a former Bishop England employee named Jeffrey Scofield was filming minor children while they changed in the High School's locker rooms, as they were required to do. In response to these lewd acts, Patrick Finneran, the principal at Bishop England, wrote parents informing them that "We are blessed to have Father Babick and our school counselors available throughout the school day to speak with anyone who feels the need to discuss the situation" (See e-mail from Patrick Finneran dated May 7, 2019, **Exhibit A**).

14. During the same time period, Plaintiff graduated from St. Joseph's Seminary College and approached Defendant Babick about the possibility of getting together to discuss Plaintiff's future within the Catholic Church. (See text messages between Plaintiff and Defendant Babick, **Exhibit B**).

15. On May 18, 2019, Plaintiff met with Defendant Babick at Our Lady of Good Counsel Catholic Church in Folly Beach, South Carolina. Plaintiff and Defendant Babick gathered at the rectory for what was supposed to be a celebration for Plaintiff's graduation from St. Joseph's. However, after having dinner, Plaintiff began to experience double vision and sensed that something was wrong.

16. At some point, Plaintiff lost consciousness and awoke naked to Defendant Babick performing oral sex on him. Plaintiff attempted to push Defendant Babick off but was physically too weak. After some time, Plaintiff involuntarily climaxed, and Defendant Babick got off from on top of him. Prior to leaving the rectory, Defendant Babick told Plaintiff "I know you won't tell anyone because they won't believe you."

17. In the days following the abuse, Plaintiff reached out to Defendant Babick to gain an understanding of what happened on the evening of May 18, 2019. Defendant Babick expressed his sorrow for the abuse and explained that he would comfort the Plaintiff moving forward.

18. Plaintiff felt shocked, embarrassed, and ashamed; suffered anxiety, depression, feelings of worthlessness and helplessness, and was nauseous, nervous, had headaches, and was otherwise ill.

19. The day after the abuse, Plaintiff flew to Houston, Texas to interview at St. Mary's Seminary, a program he was accepted into. Following the interview, Plaintiff spent the summer of 2019 in Omaha, Nebraska on a summer assignment with the Catholic Church.

20. Once there, Plaintiff began to experience severe depression as a result of the abuse perpetrated upon him. Plaintiff has described his time in Nebraska as "the worst time of his life" due to the pain, suffering, and betrayal he endured from the abuse suffered.

21. On or about May 30 of 2019, Plaintiff reported the abuse via telephone to his vocations director, Father Richard Kramer in Houston, Texas. Father Kramer blamed Plaintiff for the abuse perpetrated upon him and stated that it was consensual.

22. After Plaintiff reported the abuse, Defendant Babick was removed from Bishop England High School in his role as Chaplain.

23. Plaintiff then informed the seminary authorities about the abuse perpetrated upon him by Defendant Babick and asked for mental health counseling. Plaintiff was sent to a fertility counselor to address the trauma he had experienced at the hands of Defendant Babick.

24. At the direction of Father Kramer, Plaintiff saw Kelly Morrow, Ph.D, a psychologist in Omaha Nebraska. Dr. Morrow specializes in assisting women and couples who have experienced the emotional effects of dealing with infertility, miscarriage, and reproductive challenges.[1] It is difficult to imagine how someone who specializes in assisting couples with infertility would be able to provide the necessary services needed to help an individual dealing with trauma from sexual abuse. Unsurprisingly, treatment with Dr. Morrow was unhelpful.

25. In March of 2020, Plaintiff returned to Charleston, South Carolina to receive trauma counseling at his own expense, at the Medical University of South Carolina (MUSC) to deal with the issues created due to the abuse suffered at the hands of Defendant Babick.

26. As a result of the actions/inactions of the Defendants, Plaintiff suffered psychological damage, guilt, shame, loss of the enjoyment of his family and life generally, lack of self-worth, and depression, with physical manifestations, all as a direct and proximate result of the substantial abuse endured, inflicted by the Defendants.

## FOR A FIRST CAUSE OF ACTION:
## (VIOLATION OF 18 U.S.C.A. § 2242 SEXUAL ABUSE)

27. The allegations of the forgoing paragraphs above are incorporated into this cause of

---

[1] https://www.catholictherapists.com/kelly-morrow-ph-d

action as if fully stated herein.

28. One is in violation of 18 U.S.C.A. § 2242(2)(b) when they engaged in a sexual act with another person if that other person is physically incapable of declining participation in, or communicating unwillingness to engaged in, that sexual act. This is a criminal statute, however, the conduct of Defendant Babick is in direction of violation of said statute and amounts to civil sexual assault.

29. Plaintiff is alleging he was involuntarily intoxicated as a result of Defendant Babick's improper conduct.

30. Defendant Babick, while acting as an agent of the Diocese, engaged in a sexual act with Plaintiff while Plaintiff was physically incapable of communicating his unwillingness to engage in said act due to the improper conduct of Defendant Babick.

31. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has been injured and has directly and proximately suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages to be determined by the trier of fact, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others.

**FOR A SECOND CAUSE OF ACTION:**
**(ASSAULT)**

32. The allegations of the foregoing paragraphs above are incorporated into this cause of action as if fully stated herein.

33. Defendants' conduct, through its agents and employees, intentionally, willfully, and recklessly caused a reasonable apprehension of fear of bodily harm to the Plaintiff, both

7

through the unwanted touching of the Plaintiff by Defendants and the Plaintiff's constant fear of the same due to Defendants' acts and omissions, and those acts constitute assault.

34. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has been injured and has directly and proximately suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages to be determined by the trier of fact, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others.

**FOR A THIRD CAUSE OF ACTION:**
**(BATTERY)**

35. The allegations of the foregoing paragraphs above are incorporated into this cause of action as if fully stated herein.

36. Defendants' conduct, through its agents and employees, intentionally, willfully, and recklessly subjected the Plaintiff to unwanted, unauthorized touching, as well as taunting, threatening, sexual touching of the Plaintiff by Defendants, and those acts constitute battery.

37. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has been injured and has directly and proximately suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages to be determined by the trier of fact, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others.

**FOR A FOURTH CAUSE OF ACTION:**
**(OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

38. The allegations of the foregoing paragraphs above are incorporated into this cause of action as if fully stated herein.

39. The Defendants intentionally inflicted severe emotional distress on the Plaintiff or were certain or substantially certain that such distress would result from their conduct and the described conduct of Defendants' agent. The Defendants' conduct as alleged above was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community or society. The actions of the Defendants caused the Plaintiff emotional distress and the emotional distress suffered was foreseeable and severe such that no reasonable person could be expected to endure it, and it had physical manifestations of pain, loss of sleep, nervousness, stress, and other manifestations.

40. As a direct and proximate result of the outrageous conduct of the Defendants, the Plaintiff has been injured and has directly and proximately suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages to be determined by the trier of fact, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others.

**FOR A FIFTH CAUSE OF ACTION:**
**(NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS)**

41. Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.

42. As alleged above, Plaintiff was the victim of sexual and other assault at the hands of Defendant Babick when Babick was employed and supervised by the Diocese.

43. As a result of the relationships between Plaintiff and the Defendants, the Defendants owed duties of care toward the Plaintiff. Defendants breached those duties and were negligent, grossly negligent, careless, reckless, willful, or wanton in relation to the Plaintiff, in that they failed to:

   a. Monitor Perpetrator's behavior while acting on behalf of the Diocese;

   b. Properly investigate Defendant Babick's background through a proper background and psychological testing, to determine his proclivities toward deviant sexual conduct perpetrated upon individuals such as the Plaintiff;

   c. Address Defendant Babick's conduct at the time it was first discovered or subsequently;

   d. Supervise Defendant Babick in a manner so as to eliminate his chances to sexually abuse Plaintiff and others;

   e. Refer Plaintiff to a mental health professional that specializes in the type of trauma endured by the Plaintiff;

   f. Have in place and/or follow proper guidelines for providing special assistance to victims of sexual assault, including Plaintiff;

   g. Exercise due care for the safety and well-being of Plaintiff and others similarly situated.

44. At all relevant times, Defendants appointed, engaged, employed, and/or contracted with Defendant Babick to act as their actual and/or apparent agent, thereby engaging in any conduct which Defendant Babick engaged in under the scope of Defendant Babick's appointment/employment.

45. Defendant's had actual and/or constructive knowledge of the environment ripe for a sexual assault that has been created as a result of the aforementioned acts and omissions,

including covering up sexual abuse by priests and other officials of the Diocese, not reporting abuse to civil authorities such as the police, child protection agencies, or the faithful, and specifically requiring victims not to reveal the abusive acts.

46. As a direct and proximate result of the negligent, grossly negligent, reckless, careless, willful, and wanton behavior of the Defendants and/or their employees/agents, Plaintiff has been injured and directly and proximately suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others, all as determined by the trier of facts.

**FOR A SIXTH CAUSE OF ACTION:**
**(BREACH OF FIDUCIARY DUTY)**

47. Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.

48. A fiduciary relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of one reposing the confidence.

49. By and through the relationships described herein, Defendants entered into a fiduciary relationship with Plaintiff. Defendants undertook a duty to provide a safe environment for Plaintiff, as well as those similarly situated. A relationship if trust and confidence, and therefore a fiduciary relationship was formed.

50. By entering into a fiduciary relationship with Plaintiff, the Diocese were obligated to act only in the best interests of the Plaintiff. This duty extended to the Diocese's agents and employees, Defendant Babick included.

51. Plaintiff reposed trust and confidence in Defendant Babick, and in the Diocese. As a result of Defendant Babick's predatory acts described above and the Diocese's failure to act properly on Babick's conduct, the Diocese breached the duties owed to the Plaintiff.

52. As a proximate result of the negligent actions, inactions and breaches of fiduciary duties by the Diocese and through it's agents, the Plaintiff was harmed and is entitled to actual and compensatory damages in an amount to be determined by a jury, as well as punitive damages in an amount sufficient to deter similar conduct by the Diocese and others.

**FOR A SEVENTH CAUSE OF ACTION:**
**(NEGLIGENT RETENTION OR SUPERVISION)**

53. Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.

54. At all relevant times, the Defendants appointed, engaged, employed and/or contracted with Defendant Babick and others to act as their actual and/or apparent, duly authorized agent, servant, and/or employee and permitted him to remain as such for all of the employment periods.

55. At all relevant times, the Defendants granted privileges to Babick and others to practice as an administrator, athletic director, coach, teacher, spiritual advisor, role model, and/or counselor and, thereby, render educational, athletic, spiritual, and personal services and guidance to their students, other youth, congregants, and/or community members.

56. At all relevant times, the Defendants acted by and through Babick and others – their agents, employees, and/or servants – acting within the scope and course of his agency and/or employment.

57. At all relevant times, the Defendants owed a continuing duty to: reasonably, carefully,

conscientiously secure the services of qualified and well-trained agents, servants, and/or employees; to properly investigate, credential, qualify, select, monitor, and supervise their agents, servants, and/or employees; and to promulgate and enforce proper and effective standards, procedures, protocols, systems, and rules to ensure quality care, safety, and privacy of those entrusted to be cared for under Defendants' watch.

58. The Defendants negligently breached the above-mentioned duties by hiring, retaining, failing to properly train, and failing to properly supervise Defendant Babick and others, despite any reputation for improper, unlawful, inappropriate, lewd, and unprofessional conduct.

59. The Defendants knew or should have known that Defendant Babick engaged in improper, unlawful, inappropriate, lewd, illegal, and unprofessional conduct, including, but not limited to, taking advantage of a subservient mentee by sexually assaulting him during a "graduation celebration."

60. As a direct and proximate result of the Defendants' negligent hiring, training, retention, and supervision of Defendant Babick and others, the Plaintiff suffered permanent damages and pecuniary losses to be established at trial.

### FOR AN EIGHT CAUSE OF ACTION:
### (CIVIL CONSPIRACY)

61. The allegations of the foregoing paragraphs above are incorporated into this cause of action as if fully stated herein.

62. Plaintiff is informed and believes, that two or more individuals, including Defendants, Defendants were aware of Perpetrator's sexually deviant actions regarding his assaults upon Plaintiff. The failure of the Defendants to report the Perpetrator to the proper

authorities, the active concealment of their knowledge about the Perpetrator's deviant activities, and their agreement to do nothing to stop, or at least report, his activities constitutes a conspiracy, or a conspiracy of silence. The purpose behind this conspiracy was to protect the Defendants at the Plaintiff's and other victim's expense, proximately resulting in injury to the Plaintiff. The conspiracy of silence constitutes a failure to protect sexual assault victims who were the potential and/or actual prey of the Perpetrator and his sexually deviant propensities, this Plaintiff included.

63. As a direct and proximate result of the conspiratorial conduct of the Defendants, the Plaintiff has been injured and suffered damages. Plaintiff is entitled to a judgment against the Defendants for actual damages to be determined by the trier of fact, and punitive damage in a sufficient amount to deter such similar conduct by these Defendants or others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests actual, compensatory and punitive damages against the Defendants in amounts to be determined by the finder of fact for the various causes of action set forth above, that the costs of this action be taxed against the Defendants, and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

THE RICHTER FIRM, LLC


By:s/Lawrence E. Richter. Jr.
Lawrence E. Richter, Jr.
622 Johnnie Dodds Blvd
Mt. Pleasant, SC 29464
 (843) 849-6000

ATTORNEYS FOR PLAINTIFF

11th day of March 2022
Mount Pleasant, South Carolina